**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**at ASHLAND**

**CIVIL ACTION NO. 05-CV-66-DLB**

**SUPER QUICK, INC.**                                                    **PLAINTIFF**

**vs.**                        **MEMORANDUM OPINION & ORDER**

**PHILLIPS INVENTORY, INC., ET AL.**                        **DEFENDANTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## I.   INTRODUCTION

Plaintiff, Super Quick, Inc. ("Super Quick"), brings this action against Defendants, Phillips Inventory, Inc. and officers thereof (collectively "Phillips"), alleging lost profits stemming from Defendants' allegedly negligent performance of professional inventory services.  Nationwide Mutual Insurance Company ("Nationwide") has intervened requesting a declaration as to potential coverage of Plaintiff's claims under a General Commercial Liability (GCL) policy held by Phillips.

This matter is now before the Court upon Intervening Plaintiff Nationwide's Motion for Summary Judgment (Doc. # 39) as to the coverage issue.  Plaintiff has filed a Response (Doc. # 41) to which Nationwide filed a Reply (Doc. # 43).  Defendants have not made any filings in connection with this motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In March of 2005, Super Quik filed suit against Phillips in Greenup Circuit Court based upon a contractual relationship that existed between the parties from January 1, 2000 through October 31, 2004.  Under this contract, Phillips provided Super Quick with inventory services whereby Phillips would audit Super Quick's inventories at its various store locations in order

to account for and maintain inventory levels. The Complaint alleges that Super Quick suffered economic damages in the form of lost profits and/or lost inventory in connection with Phillips alleged failure to competently perform the inventory services. Defendants, all Virginia residents, removed the case in April of 2005.

During the period alleged in the Complaint, Phillips contracted with Nationwide for GCL insurance. Although there are multiple policies in question because of the various Phillips locations and coverage years involved, each of the policies contain substantially similar language and any differences between the policies are immaterial to the motion now before the Court, as acknowledged by the parties. Following submission of a claim by Phillips to Nationwide, which was denied, Nationwide moved for leave to intervene, seeking a Declaratory Judgment that it did not owe coverage and was not required to defend Phillips against Super Quik's claims.

### III.    ANALYSIS

**A.    Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).

-2-

Once the movant has met its initial burden of establishing that summary judgment may be appropriate as a matter of law, the non-movant cannot rest on its pleadings but must instead demonstrate that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324.  "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, it must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 341 (6th Cir. 2006).  If a reasonable jury could not return a verdict for the nonmoving party based on the evidence construed in its favor, summary judgment should be granted to movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

**B.     Breach of Contract**

Under both Virginia and Kentucky law, the two possible choices of law in this case, an insurer has the burden of proving that a policy exclusion applies.[1]  *See Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 540 S.E.2d 491, 494 (Va. 2001); *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859 (Ky. 1992).  If the terms of the insurance policy are ambiguous, the policy language must be construed in a manner that is favorable to the insured.  *See S.F (Jane Doe) v. Western American Ins. Co.*, 463 S.E.2d 450, 452 (Va. 1995); *Kemper Nat. Ins. Co., v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 874 (Ky. 2002). However, where the terms of the insurance policy are clear and unambiguous on its face, as in the case *sub judice*, the policy will be enforced as written.  *See Heaven Hill*, 82 S.W.3d. at 873.

---

[1] Because the substantive Kentucky and Virginia law is effectively identical on matters that are relevant, the Court need not address the choice of law issue.

During the period alleged in the Complaint, Phillips contracted with Nationwide for Business Owners Liability coverage, generally referred to as GCL insurance. The various policies in effect over the relevant period contain almost identical substantive language and although the parties generally agree on the scope of coverage in the abstract (save the "professional services" exclusion), the parties disagree as to whether the policy covers the losses claimed by Super Quik.[2] After examining the parameters of the asserted claims as vaguely couched by Plaintiff in both the Complaint and subsequent pleadings, the Court concludes that Plaintiff's action sounds in contract and because the Nationwide policy does not provide coverage for breach of contract claims, declaratory judgment in favor of Nationwide is warranted.

The GCL policy states that Nationwide "will pay those sums the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies." In other words, as acknowledged by both parties, the policy does not cover claims based strictly on breach of contract. The potentially dispositive question, therefore, is whether Super Quik's action sounds in contract. However, Super Quik fails to articulate the true basis of its claim and refuses to acknowledge any single legal theory of recovery.[3] Plaintiff argues that because it lacks adequate discovery, it cannot discern exactly what caused the inventory shortages and

---

[2] Plaintiff halfheartedly argues that because its claims are not specifically excluded from Phillips' insurance policy there must therefore be coverage for the claims. This argument is untenable and disingenuous because the policy must first provide for coverage on the asserted claims before any exclusions may be made applicable. In other words, if the claims are not covered under the policy to begin with, as dictated by the assertive limits of the policy coverage, a specific exclusion is not necessary to render a claim outside the scope of the policy.

[3] In its Response, Super Quick argues that Nationwide's motion is premature and states: "The Plaintiff does not concede any theory of liability against Phillips at this point."

that negligence, or even intentional conduct, might prove to be the culprit. Consequently, Plaintiff does not believe it is appropriate to label its claim as solely contractual absent additional discovery.

Regardless of whether Plaintiff's ignorance as to the parameters of its claim is genuine, at this stage in the case, Plaintiff has been provided adequate opportunity to articulate its cause of action going forward and every articulation to this point, although imprecise, indicates a contractually-based action alone.[4] First, Super Quik's Complaint against Phillips alleges that Phillips failed in its performance of inventory services, services that were completed by way of contract:

> The services performed by Phillips Inventory, Inc. and its principals, was negligently, or alternatively intentionally completed in such a fashion that covered various losses in inventory without reporting same to the Plaintiff. The Defendants, acting in concert, failed to provide the company with accurate, verified inventory for each of the stores owned by the Plaintiffs.

The Complaint goes on to claim a loss of inventory and seeks compensatory and punitive damages.[5]

Second, Nationwide propounded an interrogatory seeking each and every act or omission by Phillips which supports Super Quik's claim. Prefacing that it was impossible at

---

[4] Although Plaintiff cites a lack of adequate discovery to construct the true framework of its claims, Plaintiff originally filed the action in state court in March of 2005, with removal to this Court in April of 2005. By way of the Court's Order on May 16, 2006 (Doc. # 26), a discovery and briefing schedule was established to specifically address Nationwide's intervening complaint and the anticipated summary judgment motion on the coverage issue. Therefore, Plaintiff has had ample time to conduct preliminary discovery and identify its legal theories so that the case may proceed.

[5] In its Response, however, Plaintiff asserts that the alleged damages resulted not from actual loss of physical inventory but rather from lost profits based on underreporting of inventory levels and shrinkage: "This is not a property damages claim, but more of a loss profits claim that will have a significant impact upon the business of the Plaintiff.

that time to know exactly what caused the losses pending discovery, Super Quik again

couched its claims based on conduct occurring solely pursuant to the services contract:

> It is impossible to state each and every act or omission which occurred
> by Phillips Inventory in regards to their actions involving the inventories for
> Super Quick, Inc.  Super Quick, Inc. hired Phillips Inventory to perform
> inventories at various store locations for the years 2000 through 2004
> inclusive. ... Almost 700 audits were performed during this time period.
> The inventories were performed inappropriately and incorrectly.  The
> inventories underreported shrinkage at various stores.  This is a difference
> in what computer cash registers show that is sold versus physical inventory.
> For the five years of the audits, this unreported loss has exceeded $1.2
> million dollars retail.  The actions of Phillips Inventory and its employees and
> officers permitted a system for employees to create loss of product without
> being caught.  The exact circumstances of how Phillips Inventory and its
> employees developed this system where the underreporting occurred is
> unknown to us.

Even though Plaintiff indicates that it is unsure how the reporting failures occurred or were

facilitated, Plaintiff acknowledges that the inventory services contracted for were "perfomed

inappropriately and incorrectly."  This is the very essence of a breach of contract claim.

Third, within its briefing, Plaintiff asserts that it "is not yet certain as to the nature and

extent of the ultimate determination as to the nature of the culpability of Phillips."  Plaintiff goes

on to acknowledge, however, that "Phillips was hired in order to make certain that inventory

was properly being counted and maintained" and "at some point during the contract term, the

inventory reports of Phillips became flawed."  This again suggests that Plaintiff's claim arises

out of the contractual relationship between Super Quick and Phillips as the duty to perform

the inventory services only arose pursuant to the contract.

In sum, the aggregation of Plaintiff's characterizations of its claims suggests that the

only basis for the action is the contract between the parties for inventory services.

Nevertheless, Plaintiff maintains that the conduct by Phillips may have been negligent or

intentional thereby creating an independent cause of action outside of the contract.  Super

-6-

Quik's argument is without merit, however, because the duty of performance that Plaintiff alleges was breached by Phillips purported incompetence only arose under the services contract.  Simply put, the duty alluded to by Super Quik in its various characterizations of its claim is a duty created by way of the contract between it and Phillips and, therefore, any alleged failure – even if occurring negligently – would imply a breach of that contract, not common law negligence.  Accordingly, because the insurance policy does not provide coverage for damages arising under contract, Plaintiff's claim as currently couched falls outside of Nationwide's GCL coverage.

**C.    Property Damage**

Beyond the lack of coverage in the contractual context, even if Plaintiff's claim was determined to fall outside the bounds of a contract breach, insurance coverage would be excluded on an alternative ground.  As outlined above, the insurance policy only provides business liability coverage for four categories of damages: bodily injury, property damage, personal injury, and advertising injury.  In its motion, Nationwide argued that, at most, Super Quik's claim might be considered property damage because the claim pertained to physical inventory.  In other words, Nationwide was effectively conceding that the claim might encompass property damage with the attendant insurance coverage implications, although Nationwide argued that other exclusions prevent coverage.

However, Plaintiff responded that Nationwide inaccurately characterized the alleged damages as property damage, asserting that "there has been no physical damage to property" and "the loss of use for property damage provisions cited by Nationwide are completely and totally irrelevant to describe the loss suffered by Super Quik."  Plaintiff proceeded to concede that "this clearly is not a property damage claim, but more of a lost profits claim."  Thus,

Plaintiff simultaneously acknowledges that their claim is not for property damages while failing to provide any affirmative statements of coverage.  In other words, Plaintiff does not argue, nor could it under the damage definitions of the policy,[6] that the alleged damages fall into one of the other three categories of damages.  Consequently, the alleged damages are not covered by the policy.

Finally, even assuming arguendo that Super Quik was incorrect in its belief that the claim was not for property damages – perhaps because the loss of physical inventory (i.e., "property")  translated to the loss profits – the "property damage" exclusion found in section B(1)(k)(6) of the policy would preclude coverage of the claim.  Exclusion B(1)(k)(6) specifically excludes "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it.[7]  Notwithstanding the vagueness of Plaintiff's assertions overall, it is clear that Super Quik's action is based on the allegedly inferior work performed by Phillips.  Therefore, because the contract excludes coverage for property damage due to Phillips' own work, Super Quik's claim once again falls outside the coverage scope of the insurance policy.

---

[6] It is clear that the alleged damages would not pertain to bodily injury or advertising injury. Therefore, because property damage has been ruled out by Plaintiff, the only category of damage remaining is personal injury.  Although it would seem possible that the lost profits claimed by Super Quik could be characterized as a personal injury, especially because bodily injury is a separate category, the policy definition of "personal injury" only covers damages stemming from: (1) false arrest; (2) malicious prosecution; (3) wrongful eviction; (4) libel or slander; or (5) a right of privacy violation.  As such, Plaintiff's claimed damages do not fall into a covered category.

[7] "Your Work" is defined in the contract as:  "(a) Work or operations performed by you or on your behalf, and (b) Materials, parts, or equipment furnished in connection with such work or operations." This includes: "(a) Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of 'your work;' and (b) The providing of or failure to provide warnings or instructions."

**D.     No Duty to Defend**

Under both Virginia and Kentucky law, an insurer has a duty to defend if there are any allegations which might potentially fall within the policy coverage.  See *Cartensen v. Chrisland Corp.*, 442 S.E.2d 660, 666 (Va. 1994), and *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.*, 814 S.W.2d 273, 279 (Ky. 1991).  Simply put, the duty to defend arises whenever an action against the insured alleges facts and circumstances which, if proved, create damages that *may* be covered by the policy.  However, for the claims asserted by Plaintiff, including the various characterizations thereof, a duty to defend does not arise because the policy excludes coverage for the alleged damages on several grounds.[8]  Accordingly, in light of the Court's holding that the allegations currently asserted by Super Quik are not covered by the Nationwide policy, Nationwide does not have a duty to defend Phillips.

## IV.    CONCLUSION

Super Quik's claims against Phillips, as currently couched in a variety of ways, sound in contract alone.  Phillips' GCL policy with Nationwide does not cover breach of contract claims because the duty to perform the inventory services in a competent manner only arose under the contract.  Furthermore, Plaintiff concedes that the claim is not for property damages,

---

[8] Although not specifically alleged, Plaintiff does allude to the possibility that the alleged misconduct of Phillips in performing the inventory services was intentional.  Plaintiff sets forth this possibility in an attempt to establish that the ultimate claim may be for something other than a breach of contract. However, despite the lack of any evidence supporting any intentional conduct, even assuming arguendo that Phillips intentionally caused damages to Super Quik and that the resulting damages are indeed property damages, the policy still excludes coverage for acts that the insured intends or would expect to result in injury.  Section B(1)(a) states that the insurance does not apply to: "Property damage expected or intended from the standpoint of the insured."  This intentional conduct exclusion, traditionally found in GCL policies, exists to ensure that insurance companies are not responsible for intentional wrongdoings by the insured.  Consequently, even if Plaintiff is able to prove going forward that Phillips intended to cause Super Quik harm, the Nationwide policy would not cover such conduct and any damages stemming therefrom.

which renders the claim uncovered because the alleged damages would not fall under any of the four covered categories.  Accordingly, to the extent Plaintiff's claims are contract-based for the alleged loss of profits resulting from the rendering of professional inventory services, as currently asserted by Super Quik, said claims are not covered by the insurance policy and Nationwide does not have the duty to defend Phillips.

In accordance with the foregoing analysis, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

(1)    Intervening Plaintiff Nationwide's Motion for Summary Judgment (Doc. # 39) be, and hereby is, **GRANTED**;

(2)    A Declaratory Judgment in favor of Intervening Plaintiff Nationwide will be entered concurrently herewith; and

(3)    This matter is scheduled for a Status Conference on **May 14, 2007 at 1:30 p.m. AT ASHLAND**.

This 1st day of May, 2007.

Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\0-05-66 Super Quick (MSJ MOO).wpd

-10-